IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| v. ) | Criminal No. 15-23 |
| ) | |
| RONALD RHODES, ) | |
| ) | |
| Defendant. ) | |
| ) | |

**OPINION**

I.   Introduction

Pending before the court is an amended motion for compassionate release (ECF No. 77) filed by counsel on behalf of defendant Ronald Rhodes ("Rhodes"). Rhodes had previously filed a pro se motion for compassionate release (ECF No. 66). Rhodes requested appointment of counsel. The briefing schedule was extended several times, at defendant's request, to allow counsel to assemble the necessary records. The government filed a response, admitting that Rhodes exhausted his administrative remedies, but opposing relief on substantive grounds (ECF No. 81). The motion is ripe for disposition on the merits. United States v. Harris, No. 20-1723, 973 F.3d 170 (3d Cir. 2020).

II.   Procedural Background

On February 3, 2015, Rhodes was indicted on two counts of child pornography. On July 7, 2015, Rhodes pleaded guilty to count 1 and acknowledged his responsibility for the conduct charged at count 2. In the plea agreement, the parties stipulated and agreed that the appropriate sentence was a term of imprisonment of 10 years, followed by a term of supervised release of 10 years. The plea agreement provided: "The parties agree that such a sentence would constitute

1

just punishment, provide adequate deterrence, and protect the public from further crimes." On October 14, 2015, the court accepted the Rule 11(c)(1)(C) plea agreement and imposed the agreed-upon sentence. The term of imprisonment represented a downward variance from the advisory guideline range of 151-188 months. In imposing sentence, the court commented that Rhodes engaged in very serious misconduct, as reflected by the statutory mandatory minimum of five years in prison.

Rhodes is currently incarcerated at FCI Elkton, a low security correctional institution with an adjacent low security satellite prison in Lisbon, Ohio. https://www.bop.gov/locations/institutions/elk/, last visited September 9, 2021. There are 1,421 inmates at the facility. The Bureau of Prisons ("BOP") website reflected that on September 28, 2021, there were no active cases of COVID-19 among inmates and 1 case involving a staff member. https://www.bop.gov/coronavirus/index.jsp, last visited September 28, 2021.

Rhodes was suspected of contracting the COVID-19 virus in April 2020. He experienced shortness of breath, exhaustion, loss of appetite and a cough. Rhodes was sent to the isolation unit (ECF No. 82). It, however, is unclear whether Rhodes actually contracted COVID-19because in June 2020 his COVID test was negative. In March 2021, Rhodes was fully vaccinated against the COVID-19 virus, receiving two doses of the Moderna Vaccine (ECF No. 82-2). Vaccinations of staff and other inmates at FCI Elkton are ongoing. The government represents that as of August 2021, over 80% of the inmates at FCI Elkton have been fully vaccinated (ECF No. 81 at 9). Rhodes argues there are uncertainties about whether vaccines are effective against variants of the virus and how long the vaccine protections will last. Rhodes did not present any evidence about the impact of his vaccination on his risk of contracting the Covid-19 virus again or his risk of experiencing severe symptoms if he does get reinfected.

Rhodes is now 64 years old. His projected release date, which reflects credit for good time, is August 14, 2023. He has served approximately 6 ½ years in prison. Rhodes contends that he is vulnerable to severe illness and death if exposed to COVID-19 due to the following medical conditions: diabetes, hypothyroidism, Crohn's disease, heart failure, pneumonia, gastro-esophageal reflux disease ("GERD"), gastritis, dermatitis, shortness of breath, tightness in chest, lethargy, brain fog and weight gain. He has requested an inhaler but has not gotten one. Rhodes is currently on three blood pressure medications and diabetes medication (ECF No. 77 at 2).

### III.  Discussion

**A.  Applicable Law**

Rhodes seeks compassionate release from imprisonment. A district court has only limited authority to "modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c); United States v. Savani, 733 F.3d 56, 60 (3d Cir. 2013). The Third Circuit Court of Appeals has recognized that Congress enacted exceptions to this "general rule of finality" in 18 U.S.C. § 3582(c)(1). United States v. Easter, 975 F.3d 318, 323 (3d Cir. 2020) (explaining that "[s]entence modifications under § 3582(c) constitute 'exception[s] to the general rule of finality' of sentences") (quoting Dillon v. United States, 560 U.S. 817, 824 (2010)).

Section 3582(c)(1)(A) provides:

> **(c) Modification of an imposed term of imprisonment.**--The court may not modify a term of imprisonment once it has been imposed except that—
>
> > (1) in any case--
> >
> > > (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the

> warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that--
>
> > (i) extraordinary and compelling reasons warrant such a reduction; or
> >
> > (ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission….

18 U.S.C. § 3582(c)(1)(A). The foregoing statutory provision sets forth a three-step analysis for district courts to utilize to resolve a motion for compassionate release. The Third Circuit Court of Appeals has instructed that pursuant to § 3582(c)(1)(A), "a district court 'may reduce [a federal inmate's] term of imprisonment' and 'impose a term of probation or supervised release … if it finds that … extraordinary and compelling reasons warrant such a reduction.'" United States v. Pawlowski, 967 F.3d 327, 329 (3d Cir. 2020) (quoting 18 U.S.C. § 3582(c)(1)(A)). "[B]efore granting compassionate release," however, "a district court must 'consider[] the factors set forth in [18 U.S.C. §] 3553(a) to the extent that they are applicable." Id. (quoting 18 U.S.C. § 3582(c)(1)(A)). The court must also consider whether a sentence reduction is consistent with applicable policy statements issued by the Sentencing Commission, 18 U.S.C. § 3582(c)(1)(A). United States v. Andrews, No. 20-2768, -- F.4th --, 2021 WL 3852617, at *2 (3d Cir. Aug. 30, 2021) (prisoner's compassionate release motion "may be granted if the court finds that the

4

sentence reduction is (1) warranted by 'extraordinary and compelling reasons'; (2) 'consistent with applicable policy statements issued by the Sentencing Commission'; and (3) supported by the traditional sentencing factors under 18 U.S.C. § 3553(a), to the extent they are applicable.").

Based upon the foregoing, to grant Rhodes compassionate release under § 3582(c)(1)(A), the court must analyze whether: (1) extraordinary and compelling reasons exist for his release; (2) compassionate release is warranted in consideration of the § 3553(a) factors;[1] and (3) compassionate release is consistent with applicable policy statements issued by the Sentencing Commission.

Rhodes bears the burden of proof by a preponderance of the evidence to show that he is entitled to compassionate release. United States v. Smith, No. CR 9-187, 2020 WL 4047485, at *2 (W.D. Pa. July 20, 2020) (citing United States v. Adeyemi, No. CR 06-124, 2020 WL 3642478, at *16 (E.D. Pa. July 6, 2020)). Courts have held that to satisfy this burden, a movant must produce evidence to the court. See e.g., United States v. Matthews, Crim. Action No. 09-

---

[1] The factors set forth in 18 U.S.C. § 3553(a) are:
- the nature and circumstances of the offense and the history and characteristics of the defendant, § 3553(a)(1);
- the need for the sentence imposed to afford adequate deterrence to criminal conduct, protect the public from further crimes of the defendant, and provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner, § 3553(a)(2)(B)-(D);
- the sentencing range established by the Sentencing Commission, § 3553(a)(4);
- any pertinent policy statement issued by the Sentencing Commission, § 3553(a)(5);
- the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct, § 3553(a)(6); and
- the need to provide restitution to any victims of the offense, § 3553(a)(7).

612-1, 2020 WL 5217132, at *6 (E.D. Pa. Sept. 1, 2020); <u>United States v. Brunetti</u>, Crim. Action No. 2020 WL 4516541, at *6 (E.D. Pa. July 31, 2020); <u>United States v. Richardson</u>, Crim. No. 18-507, 2020 WL 2200853, at *2 (E.D.N.C. May 6, 2020).

### B. Extraordinary and Compelling Reasons

#### 1. General Background

Prior to the enactment of the First Step Act on December 21, 2018, only the Director of the BOP could file a motion for a sentence reduction under §3582(c)(1)(A)(i). <u>Ray v. Finley</u>, No. 3:19-CV-0988, 2019 WL 5569616, at *3 (M.D. Pa. Oct. 29, 2019). The First Step Act amended § 3582(c)(1)(A), which now provides that "a motion for reduction in sentence may be filed by either the Director of the BOP or a federal inmate" after the federal inmate exhausts administrative remedies. <u>Id.</u>

"Congress did not define 'extraordinary and compelling reasons' except to provide 'rehabilitation…alone' does not suffice." <u>Adeyemi</u>, 2020 WL 3642478, at *7 (quoting 28 U.S.C. § 994(t)). The Third Circuit Court of Appeals has explained that "compelling and extraordinary" reasons for the reduction of a sentence are "defined by the commentary to policy statement U.S.S.G. § 1B1.13." <u>United States v. Handerhan</u>, No. 19-1904, 789 F. App'x 924, 925 (3d Cir. 2019) (citing <u>United States v. Barberena</u>, 694 F.3d 514, 521 n.10 (3d Cir. 2012)). "That commentary currently lists four categories of such reasons: (1) the defendant's medical condition; (2) the defendant's age; (3) the defendant's family circumstances; and (4) 'other reasons' as determined by the Director of the Bureau of Prisons." <u>Id.</u> (quoting U.S.S.G. § 1B1.13 cmt. n.1.). The court in <u>Adeyemi</u> explained the first three categories as follows:

> The first category includes incarcerated persons suffering from terminal illnesses, such as metastatic solid-tumor cancer, amyotrophic lateral sclerosis,

> end-stage organ disease, and advanced dementia, or those suffering from medical conditions, impairments, or deteriorations due to age that "substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover."…The second category includes incarcerated persons who are at least sixty-five years old, experience a serious deterioration in physical or mental health because of the aging process; and have served at least ten years or seventy-five percent of their term of imprisonment, whichever is less….The third extraordinary and compelling reason may arise where the primary caregiver of the incarcerated person's minor child or children died or became incapacitated or where the incarcerated person's spouse became incapacitated and he is the only available caregiver for the spouse.

Adeyemi, 2020 WL 3642478, at *7 (citing U.S.S.G. § 1B1.13 cmt. n.1(A)-(C)).

In Andrews, the court of appeals held that district courts are not strictly bound by the policy set forth in the sentencing guidelines. Andrews, 2021 WL 3852617, at *3. On the other hand, the district court "did not err when it consulted the text, dictionary definitions, and the policy statement to form a working definition of 'extraordinary and compelling reasons.'" Id.

The court in Somerville provided a helpful working definition:

> The word "extraordinary" is commonly understood to mean "going beyond what is usual, regular, or customary," or "exceptional to a very marked extent." *Extraordinary*, Merriam-Webster Dictionary (2020); see also *Extraordinary*, Black's Law Dictionary (11th ed. 2019) ("Beyond what is usual, customary, regular, or common.").
>
> The word "compelling" means "forceful," "demanding attention," or "convincing." *Compelling*, Merriam-Webster Dictionary (2020); see also *Compelling Need*, Black's Law Dictionary (11th ed. 2019) ("A need so great that irreparable harm or injustice would result if it is not met.").
>
> Thus, at a minimum, § 3582(c)(1)(A)(i) requires a justification for release that is both unusual (i.e., unique to the inmate, and beyond the ordinary hardship of prison) and significant (i.e., serious enough to make release appropriate).

Somerville, 2020 WL 2781585, at *7.

### 2. Consideration of COVID-19

In Somerville, the court concluded that "a prisoner seeking release due to COVID-19

must at least show: (1) a sufficiently serious medical condition, or advanced age, placing the prisoner at a *uniquely high risk* of grave illness or death if infected by COVID-19; and (2) an actual, non-speculative risk of exposure to COVID-19 in the facility where the prisoner is held." Somerville, 2020 WL 2781585 at *4.  (emphasis added). That test must be modified in light of the vaccinations that are occurring in BOP facilities.  Even if an inmate has serious underlying medical conditions and faces a non-speculative risk of exposure to the COVID-19 virus, the vaccine may prevent that inmate from contracting the virus or significantly reduce that inmate's risk of infection or reinfection.

The court, therefore, needs to determine whether Rhodes set forth extraordinary and compelling reasons for his compassionate release based upon his medical conditions and the situation at FCI Elkton – taking into account his vaccination. Rhodes has the burden to produce evidence to show that: (1) he faces a uniquely high risk of grave illness or death if infected or reinfected by the COVID-19 virus, considering his underlying medical conditions and age and the protective effects of the vaccine; and (2) he faces a non-speculative risk of contracting or recontracting the COVID-19 virus, considering both the risk of exposure at FCI Elkton and the preventative effects of the vaccine.

      a. Whether Rhodes faces a uniquely high risk of grave illness or death from being reinfected by the COVID-19 virus

In his motion, Rhodes contends that he has a uniquely high risk of grave illness or death from the COVID-19 virus due to his various preexisting medical conditions.  Rhodes also contends that he is suffering from the lingering effects of contracting COVID-19, including shortness of breath, tightness in chest, lethargy, brain fog and weight gain.

The government recognizes that some of Rhodes' medical conditions would ordinarily place him at increased risk of serious consequences from COVID-19 (ECF No. 81 at 19).  The

government contends, however, that because Rhodes is fully vaccinated his risk of severe illness from the COVID-19 virus is substantially mitigated.  The government asserts that the BOP is providing appropriate care for Rhodes's medical conditions.  In sum, the government argues that Rhodes did not meet his burden to demonstrate extraordinary and compelling reasons for compassionate release.

The medical records reflect that Rhodes is, in fact, receiving proper medical treatment for his preexisting conditions.  Those conditions do not prevent Rhodes from providing self-care in the correctional environment and do not warrant compassionate release.  The CDC recognizes that some patients may have symptoms from a COVID-19 infection that can last for weeks or even months after recovery from acute illness.  The most commonly reported symptoms include shortness of breath, lethargy, chest pain and brain fog.  https://www.cdc.gov/coronavirus/2019-ncov/long-term-effects.html, last visited September 27, 2021.  Assuming that Rhodes did have COVID-19 in April 2020, there is no evidence that the prison environment exacerbates Rhodes's conditions and it appears that he would the same symptoms if he were released.  In sum, the lingering symptoms do not warrant compassionate release.

The court concludes that, based on this record, because Rhodes is now fully vaccinated he cannot establish that he faces an extraordinary or compelling risk from the COVID-19 virus. "Although vaccines are not one hundred percent effective, the CDC states that '[c]urrently authorized vaccines in the United States are highly effective at protecting vaccinated people against symptomatic and severe COVID-19.'  Vaccines are particularly effective at preventing 'severe illness and death.'" United States v. Singh, No. 4:15-CR-00028-11, 2021 WL 928740, at *2 (M.D. Pa. Mar. 11, 2021) (concluding that recent vaccination mitigated risk to such an extent that COVID-19, in combination with defendant's underlying conditions, no longer presented an

extraordinary and compelling reason to grant compassionate release). In Singh, the court recognized that the inmate in that case (like Rhodes) had underlying medical conditions which ordinarily would have established grounds for compassionate release. The court concluded, however, that vaccination mitigated those risks. Id. at *3. The court's conclusion was "in accord with the vast majority of courts that have considered this issue." Id. (citations omitted).

In other words, the decisions teach that because Rhodes is fully vaccinated, he faces a reduced risk that: (1) he will again contract the COVID-19 virus; and (2) if he is reinfected, he will experience severe symptoms. In Singh, the court emphasized that an inmate bears the burden to demonstrate that compassionate release is warranted and denied the motion without prejudice to the inmate's opportunity to file a new motion supported by evidence that the vaccine would not mitigate a substantial risk of serious illness from a COVID-19 infection. Id. at *4.

In this case, Rhodes similarly failed to meet his burden to demonstrate that he continues to face a substantial risk from the COVID-19 virus. Rhodes did not provide any evidence, but instead raised questions about the long-term effectiveness of the vaccine only through attorney argument. While there are certainly still unknowns about the vaccine administered to Rhodes, it appears that Rhodes's risks of (1) being reinfected by COVID-19, and (2) suffering severe illness if he is reinfected, are speculative because of his vaccination. On this record, the court concludes that Rhodes failed to meet his burden to show extraordinary and compelling reasons for compassionate release due to the COVID-19 virus.

      b. Whether Rhodes faces an actual, non-speculative risk of recontracting the COVID-19 virus at FCI Elkton

The court takes judicial notice that there are zero current cases of COVID-19 infections among inmates at FCI Elkton. Although the court recognizes the BOP's significant efforts to

minimize and control the spread of the pandemic, it is well-established that it is difficult to engage in social distancing and other mitigation efforts in a congregate setting such as a prison.

The government reports that over 80% of the inmates at FCI Elkton (including Rhodes) have now been vaccinated for COVID-19. Vaccination of all or substantially all inmates and staff will limit the spread of the virus and reduce the risk of exposure at FCI Elkton. As noted above, even if Rhodes is exposed to the COVID-19 virus, it appears that he will be far less likely to be infected or reinfected or suffer serious symptoms due to his vaccination. In sum, it would be speculative at this point for the court to conclude there is an actual risk that Rhodes, after his vaccination, will be infected or reinfected by the COVID-19 virus at FCI Elkton.

       c. Conclusion about COVID-19

Because Rhodes received the two doses of the Moderna vaccine, the court cannot find that he met his burden to establish that he is at "*uniquely* high risk" of being infected or reinfected with the COVID-19 virus or experiencing serious illness if he is infected or reinfected with the COVID-19 virus. To conclude otherwise would be speculative, based upon the record before this court. In sum, Rhodes did not show an extraordinary and compelling reason for his compassionate release.

### 3. Other reasons for compassionate release

Rhodes argues, cursorily, that he should be entitled to compassionate release based on his age (64) and because his disabled elderly mother needs him to take care of her (ECF No. 77 at 2). The court is not persuaded. The guidelines policy statement, U.S.S.G. § 1B1.13, provides that age does not become a factor under the inmate turns 65. In addition, the inmate must

experience a serious deterioration in physical or mental health because of the aging process and must have served at least ten years or seventy-five percent of their term of imprisonment. There is no evidence that Rhodes meets those factors. Similarly, the "family care" policy does not apply where other family members are available to provide care. In this case, the record reflects that Rhodes' sister is available to provide care for his mother, although she does not live close by her mother (ECF No. 81-1). In sum, Rhodes' age and family circumstances do not rise to the kind of compelling and extraordinary reasons that would warrant compassionate release.

### 4. Section 3553(a) factors

Even assuming, arguendo, that Rhodes articulated extraordinary and compelling reasons, the court would deny his motion. The compassionate release statute states that a court may reduce the term of imprisonment "after" it considers the sentencing factors set forth in 18 U.S.C. § 3553(a) to the extent they are applicable. 18 U.S.C. § 3582(c)(1)(A). Even if Rhodes established an extraordinary or compelling reason for release, release must also be consistent with the § 3553 factors and guidelines policies. In doing so, the court will consider the most up-to-date picture of the defendant's history and characteristics, including the materials submitted by Rhodes' attorney (ECF No. 77-1 to 77-5). *See United States v. Tidwell*, No. CR 94-353, 2020 WL 4504448, at *7 (E.D. Pa. Aug. 5, 2020). The court recognizes that the conditions of Rhodes' confinement have been more onerous than anticipated due to the BOP's response to the COVID-19 virus.

The government emphasizes that Rhodes poses a danger to the community if released. The "danger to the community" policy consideration in U.S.S.G. § 1B1.13 is somewhat similar to the § 3553(a)(2)(C) sentencing factor that a sentence "protect the public from further crimes of

the defendant." The government argues that Rhodes remains a danger to children in the community based on the seriousness of his crime of conviction.

The court weighed the § 3553(a) factors in imposing the original sentence and deciding whether to adopt the parties' Rule 11(c)(1)(C) plea agreement. At that time, the court recognized that Rhodes engaged in "very serious misconduct" that was devastating to the victim children. The court recognized that the term of imprisonment imposed by Rhodes represented a significant (31 month) downward variance from the low end of the otherwise-applicable advisory guideline range. The court noted that Rhodes had no prior criminal history but appeared to be addicted to child pornography.

Upon reexamining the § 3553(a) factors, the court again adheres to its determination that the term of imprisonment was warranted. Indeed, in the plea agreement, Rhodes and the government agreed that a term of imprisonment of 120 months was the appropriate sentence. A reduction of his sentence would not be consistent with the statutory sentencing purposes of just punishment, deterrence to criminal conduct and protection of the public from further crimes by the defendant. In sum, the court reaffirms that a term of imprisonment of 120 months is sufficient, but not greater than necessary, to accomplish the sentencing purposes.

**V. Conclusion**

Once a court imposes a sentence and it becomes final, it may not be modified unless an exception to the rule of finality applies in the case. Here, Rhodes did not satisfy his burden under § 3582(c)(1)(A) to show that an extraordinary and compelling reason warrants his compassionate release from imprisonment. Even assuming Rhodes met that burden, compassionate release is not appropriate after consideration of the policies and § 3553(a) factors. His original and amended motions for compassionate release (ECF Nos. 66, 77) will, therefore, be denied. The denial is without prejudice in the event Rhodes's circumstances or the conditions at his place of confinement change.

An appropriate order will be entered.

Dated:   September 29, 2021.

                              BY THE COURT:

                              <u>s/ Joy Flowers Conti</u>
                              Joy Flowers Conti
                              Senior United States District Judge